UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHARON HAYES** | * | **CIVIL ACTION NO.** |
| | * | |
| | * | **SECTION:** |
| **VERSUS** | * | |
| | * | **JUDGE:** |
| | * | |
| **CENTENE MANAGEMENT COMPANY &** | * | |
| **LOUISIANA HEALTHCARE** | * | |
| **CONNECTIONS, INC.** | * | |
| | * | |

*****************************************************************************

## COMPLAINT WITH JURY DEMAND

Plaintiff, Sharon Hayes, (hereinafter, "Plaintiff" or "Ms. Hayes"), through undersigned counsel files this Complaint against Defendants, Louisiana Healthcare Connections, Inc., and Centene Management Company for violations under the Family Medical Leave Act ("FMLA") and avers as follows:

### INTRODUCTION

Ms. Hayes was a Call Center Supervisor for Louisiana Healthcare Connections ("LHC") and Centene Management Company ("Centene") serving Medicare and Medicaid participants in the State of Louisiana. Ms. Hayes was diagnosed with triple negative breast cancer in 2018 and went into remission. In 2019 the cancer returned and metastasized. In April 2021, Ms. Hayes began to report to a new supervisor, Ms. Shalawn Francois. Ms. Francois, as soon as she began to supervise Ms. Hayes, began to interfere with and retaliate against Ms. Hayes because of her disability and use/exercise of leave pursuant to the FMLA. Not only did Ms. Francois discipline Ms. Hayes for days she took off to seek cancer treatment, but she also interfered with Ms. Hayes

right to exercise her FMLA leave, including requiring Ms. Hayes to cancel two appointments at MD Anderson causing a delay in Ms. Hayes chemotherapy treatment. By the time Ms. Hayes was able to reschedule, the cancer had spread even further. When Ms. Hayes reported this activity to Human Resources, LHC and Centene did nothing to protect her. Shortly after Ms. Hayes made her complaint to Human Resources, she was terminated by Ms. Francois.

As a result of her termination, and her status as a cancer fighter, Ms. Hayes has been unable to secure permanent employment with the equivalent benefits and stability. Ms. Hayes has also lost her life insurance – which she relied on in the event of her death, naming her two children as beneficiaries.

Ms. Hayes has also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which charge is currently pending.

**JURISDICTION AND VENUE**

1.

This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331, for the reason that this action arises under the laws of the United States, and specifically, The Family and Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601, et seq. Additionally, this Court has original subject matter jurisdiction for the reason that this action arises under the Americans with Disabilities Act of 1990, which will be brought following the exhaustion of the administrative remedies at the Equal Employment Opportunity Commission.

2.

Venue is proper in the United States District Court for the Middle District of Louisiana under 28 U.S.C. §§1391(b) because LHC is domiciled in the Middle District of Louisiana, Centene

is registered to do business in the Middle District of Louisiana, and a substantial part of the actions giving rise to Ms. Hayes' claims arise from the activity of Defendants' headquarters in the Middle District of Louisiana.

## THE PARTIES

3.

Plaintiff, Ms. Sharon Hayes ("Ms. Hayes"), is an adult citizen and resident of Houston, Texas.

4.

Ms. Hayes brings this action against the following Defendants:

A. Made Defendant herein is Louisiana Healthcare Connections, Inc. (hereinafter, the "LHC.") LHC is a corporation registered in the State of Louisiana, with a registered business establishment in Baton Rouge, Louisiana.

B. Made Defendant herein is Centene Management Company, LLC ("Centene"). Centene is a limited liability company, registered in and doing business in Baton Rouge, Louisiana. Centene is domiciled in the State of Wisconsin.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.

Ms. Hayes was terminated on September 06, 2022. Ms. Hayes' claims arise from the Americans with Disabilities Act of 1990.

6.

On information and belief, Centene and LHC have over 50 employees, which exceeds the requisite number of employees for claims arising under the FMLA and ADA.

3

7.

As of the date of the filing of this Complaint, a charge has been filed with the EEOC.

8.

As the EEOC investigation has not been completed, Ms. Hayes does not bring her ADA claims in this Complaint but advises Defendants that at the time of the exhaustion of her remedies, Ms. Hayes' will seek leave from this Honorable Court to amend the Complaint to include her claim being made pursuant to the Americans with Disabilities Act of 1990.

**FACTS**

9.

On information and belief, Centene is the parent company for LHC. LHC holds a contract with the State of Louisiana to administer Medicare and Medicaid services to the recipients in Louisiana.

10.

Ms. Hayes is a single mother of three children.

11.

Ms. Hayes began her employment with LHC/Centene as a Customer Representative in the call center in 2012.

12.

After four years with LHC, Ms. Hayes was promoted to the Pharmacy Department and given the position of Referral Specialist in 2016.

13.

In 2018, after six years of employment with LHC, Ms. Hayes was diagnosed with triple negative breast cancer. Triple-negative breast cancer (TNBC) accounts for about 10-15% of all breast cancers. These cancers tend to be more common in women younger than age 40, who are Black, or who have a *BRCA1* mutation. TNBC differs from other types of invasive breast cancer in that it tends to grow and spread faster, has fewer treatment options, and tends to have a worse prognosis.

14.

In 2019, while Ms. Hayes was in remission, she was notified that she was to be promoted to the position of Call Center Supervisor.

15.

In November 2019, after Ms. Hayes had already accepted the promotion, Ms. Hayes had a mammogram and learned that the cancer had returned.

16.

Ms. Hayes informed Human Resources specialist, Michelle Anderson, that her cancer had returned. Ms. Hayes also notified her former boss and director of the call center, Joshua Loraquette, that the cancer had returned. Neither Human Resource nor Mr. Loraquette advised Ms. Hayes that she should take FMLA leave.

17.

Mr. Loraquette told Ms. Hayes that the Company would work with her. Ms. Hayes was informed that she would become a salaried employee with the promotion and that visits to the doctor would be no problem. As such, Hayes accepted the promotion.

18.

Ms. Hayes underwent a double mastectomy, causing her to miss work as needed between November 2019, and February 2020.

19.

In or around 2020, Defendants hired two new supervisors, Ms. Shalawn Francois and Ms. Linda Bailey.

20.

In or around 2020, Ms. Hayes began to report to Ms. Linda Bailey without incident until Ms. Hayes learned that Ms. Bailey was discussing Ms. Hayes' medical condition with the other department supervisor, Shalawn Francois.

21.

In April 2021, the call center was re-organized, and Ms. Hayes began to report to Ms. Francois who was now responsible for all of the call center supervisors.  Ms. Hayes began to have serious problems with a supervisor related to her cancer diagnosis and treatment.

22.

Just two months after Ms. Francois became Ms. Hayes' supervisor, Ms. Francois began to interfere with Ms. Hayes' medical leave and retaliate against her as a direct result of her cancer diagnosis and treatment.

23.

In May 2021, Ms. Hayes received a Documented Coaching document (the "First Documented Coaching") from Ms. Francois – just one month after Ms. Francois became her supervisor.  In the First Documented Coaching, Ms. Francois immediately began question and criticize her for her medical related leave. Ms. Hayes was given the opportunity to respond to the

First Documented Coaching. Ms. Francois raised the following issues and Ms. Hayes answered as follows:

- **Professionalism** – Ms. Francois took issue with Ms. Hayes taking a phone call in a one-on-one meeting. Ms. Hayes apologized for the phone call and advised that the call was taken while Ms. Hayes had been put on hold by Ms. Francois.

- **Time Management** – Ms. Francois specifically reprimanded Ms. Hayes for not responding timely to email messages and for having "a lot of time out of the office for appointments for you or your children." Ms. Hayes responded that she knew Ms. Hayes was battling cancer, that her cancer had returned and that she had informed the Company of her need for medical appointments following her double mastectomy. Ms. Hayes also advised her of her possible recurrence in April. Ms. Hayes further advised that most of her appointments are in the morning, so she is able to report to work after, and that she had a procedure done two times that required follow-up. As for missing work for her children, Ms. Hayes advised that she was out of the office prior to her being under her supervision for her daughter's health and that any other time with her children was done during her lunch break.

- **Task Management** – Ms. Francois against coached Ms. Hayes for "missing meetings and interviews." Ms. Hayes advised Ms. Francois that she had never missed a meeting unless she was out of the office.

- **Insubordination** – Ms. Francois deemed Ms. Hayes "insubordinate" for not getting a Zoom background and light. This was not a requirement of other employees and the only time Ms. Francois advised Ms. Hayes of anything re: a light and/or background was in a passive manner that Ms. Hayes did not understand. Ms. Hayes advised she would correct both and did.

At the end of the First Documented Coaching, Ms. Hayes noted that Ms. Francois had only been her supervisor for one month.

24.

After Ms. Hayes' contested Ms. Francois' documented coaching and directly, and again, reminded her that she was battling cancer, Ms. Francois' behavior towards Ms. Hayes worsened.

25.

Ms. Francois would contact Ms. Hayes after hours, on days she had taken leave, directing her to complete certain computer tasks. She would also contact Ms. Hayes while Plaintiff was on

vacation to handle payroll tasks, instead of delegating the tasks to other employees as had been done in the past.

26.

In June 2021, Ms. Hayes had a lung biopsy, which ended up being an unknowingly painful procedure for Ms. Hayes. Ms. Hayes did not anticipate needing to miss an extra day.

27.

After Ms. Hayes was discharged to her home, she remained in pain and had complications with excessive bleeding.

28.

Ms. Hayes contacted Ms. Francois the following morning via text message to notify her that she was still in pain and had not been given any medication. Ms. Hayes asked Ms. Francois if someone would cover for her. Ms. Francois informed Ms. Hayes that she needed to find her own replacement for the day.

29.

Ms. Hayes informed Ms. Francois of the severity of her condition and Ms. Francois replied: "Sharon I understand if you can't work that is fine. But note that the responsibility of your job now becomes mine and your peers…"

30.

In July 2021, due to her medical condition, Ms. Hayes applied for leave pursuant to the Family Medical Leave Act. The leave was approved from July 01, 2021 to July 01, 2022. The estimated frequency of Ms. Hayes' leave was to be about four (4) days per month.

31.

In July 2021, while on intermittent FMLA leave, Ms. Hayes put in for vacation for two scheduled appointments at MD Anderson on September 03, 2021, and September 07, 2021.

32.

On August 11, 2021, Ms. Francois e-mailed Ms. Hayes to "touch base" with her about a few things. First, Ms. Francois informed her that her leave would be unpaid because she did not have accrued vacation time to pay for the FMLA leave. Second, Ms. Francois advised her that her request for September 03 and September 07 was rejected. Ms. Francois asked Ms. Hayes if she had planned a trip, and Ms. Hayes informed her that it was for her appointment at MD Anderson.

33.

Because Ms. Francois would not approve her leave so that she could attend her doctor's appointment at MD Anderson, Ms. Hayes had to cancel her appointments. She was not able to reschedule them until October 2021.

34.

Since Ms. Hayes had to reschedule her appointment, this also delayed her chemotherapy treatment.

35.

When Ms. Hayes was finally able to see the physician in October, Ms. Hayes had a new spot on her bone – when she was originally supposed to be treated for nodules on her right and left lungs.

36.

In October 2021, while on FMLA leave, Ms. Francois put Ms. Hayes on a Performance Improvement Plan ("PIP") for a missed email, for failure to fully complete a Centene U training

on the exact date it was due, and a "work list" that had not been cleared for the agents that were under her.

37.

Ms. Hayes was put on a PIP for work duties that she was allegedly unable to perform to Ms. Francois' arbitrary rules because of her serious medical condition.

38.

Ms. Francois then, without good reason, made the decision to extend her PIP through January 2022, for reasons unknown to Ms. Hayes and in violation of the Company policies related to Performance Improvement Plan.

39.

In November 2021, Ms. Hayes began chemotherapy again. On Wednesdays, her chemo day, Ms. Hayes worked a later schedule (10:00 a.m. to 7:00 p.m.) to accommodate her need to receive chemotherapy and perform the functions of her position, with this accommodation.

40.

On July 6, 2022, while receiving her chemotherapy treatments, Ms. Hayes sent a text message to Ms. Francois advising that she was going to be late that day. Ms. Francois then questioned Ms. Hayes' treatment plan (while Ms. Hayes was actively in treatment), asking what time Plaintiff arrived for chemo and if she normally stayed there for 3 hours. Being questioned by her supervisor about her treatment, Ms. Hayes felt compelled to call Ms. Francois, during her treatment, to explain her chemotherapy regimen once again.

41.

The following day, Ms. Francois sent Ms. Hayes an emoji of watching "eyes" for reasons unknown to Ms. Hayes, causing her more stress during an incredibly trying time. Undoubtedly, Ms. Francois wanted Ms. Hayes to know that she was "watching."

42.

On July 15, 2022, Ms. Francois had a one-on-one with Ms. Hayes to discuss work. Ms. Francois told Ms. Hayes that she should consider whether this job was a good fit for her because of her health. Specifically, Ms. Francois told Plaintiff to consider the "personal things" going on. This conversation is memorialized in an email from Ms. Francois to Ms. Hayes: "[W]e discussed the demands of the role were a lot for you based on the things that you are dealing with personally…" The only thing Ms. Hayes was personally dealing with in July 2022, was her cancer treatment.

43.

Ms. Hayes responded informing Ms. Francois: "I have been transparent about things pertaining to my health and work around my work schedule as I'm fighting for my life…"

44.

On July 18, 2022, Ms. Hayes sent an email to Ms. Francois' new boss, Rodney Long, advising him that she no longer felt "safe" in her position because of the behavior that was happening and escalating with Ms. Francois.

45.

On July 25, 2023, Ms. Hayes FMLA was renewed and approved through July 01, 2023.

46.

Ms. Hayes met with Mr. Long in August 2022. During the meeting, Mr. Long advised that there would be a "sit down" between Ms. Francois, Mr. Long, and Ms. Hayes. LHC failed to follow through with this, the meeting never took place, and Mr. Long failed to ever reach back out to Ms. Hayes.

47.

In August 2022, Ms. Hayes requested a meeting the Human Resources. Ms. Hayes met with Kathleen Sullivan, to put in a complaint about "discrimination of health" for the repeated consistent abuse she was suffering at the hands of Ms. Francois.

48.

Ms. Hayes submitted a ten-page PowerPoint presentation on the denied access to her medical providers, Ms. Francois contacting Ms. Hayes while she was exercising FMLA leave (, on Ms. Francois interfering with her leave, on Ms. Francois questioning her treatment plan, on the documented coaching, PIP, etc. that was a direct result of her health condition.

49.

After Ms. Hayes reported this to Human Resources, Ms. Francois' behavior became even worse and clearly retaliatory. Ms. Francois began to constantly micromanage Ms. Hayes even more, filling up her instant messages asking if her tasks were complete in an inordinate period of time, and asking her when the tasks would be done, and generally criticizing Ms. Hayes.

50.

Ms. Francois sent Ms. Hayes an email with a "motivational quote" about being wrong and not taking everything personally. No other information was included in this email.

51.

The emails became so bizarre that Ms. Hayes simply began to forward them to Human Resources.

52.

Later in August 2022, Ms. Hayes began to put pressure on human resources to help her. HR advised Plaintiff that they could not give her the results of their "investigation," but to keep doing what she needed to do for her cancer diagnosis and treatment.

53.

Ms. Hayes expressed to Ms. Sullivan in HR her concern that she would be fired by Ms. Francois. Ms. Sullivan advised Ms. Hayes to simply follow the company's FMLA protocol. Yet again, Human Resources took no effort or action to facilitate a meeting with. Ms. Hayes again, nor did they set up a meeting with HR and the parties.

54.

On September 6, 2022, while on Intermittent FMLA leave, Ms. Hayes was terminated directly by Ms. Francois.

55.

On the morning of her termination, Ms. Hayes logged on that morning and worked for 2 hours. She then began to feel ill and informed Ms. Francois, through instant messaging, that she was going to need to put in for six (6) FMLA hours. Ms. Francois did not respond. Ms. Hayes called Ms. Francois, but she did not answer.

56.

Ms. Hayes then called a Microsoft Teams meeting with Linda Bailey, Ms. Francois, and herself. During this meeting, Ms. Hayes was terminated, immediately after notifying the Company of her need to take leave. Ms. Bailey said nothing during the call.

57.

Ms. Francois used this call to inform Ms. Hayes that she did not meet the qualifications of the Performance Improvement Plan that she was on- however, Ms. Hayes was not on a Performance Improvement Plan at the date of her termination.

58.

Following her termination, Ms. Hayes placed a call to Mr. Long, who seemed surprised that Ms. Hayes had been terminated. He advised investigate what was going on and return her call. However, Ms. Hayes never heard back from Mr. Long.

59.

Human Resources never got back in touch with Ms. Hayes.

60.

One month later, just shortly after her termination, Ms. Hayes received a ten years of service plaque from the Company.

61.

Following her termination, Ms. Hayes began to look for employment.

62.

As a result of her termination, Ms. Hayes lost her salary and benefits.

63.

As a result of her termination, Ms. Hayes lost her life insurance that benefitted her children.

64.

Ms. Hayes has found employment following her termination, but the employment is not permanent and does not come with benefits.

**CLAIMS FOR RELIEF**

Ms. Hayes suffered economic damages, including the costs associated with loss of wages and the inability to immediately secure equivalent employment as a result of the termination. Further, Ms. Hayes suffered non-economic damages, which are ongoing.

For the reasons set forth herein, Ms. Hayes' termination was in violation of federal law, and has resulted in extensive damage to her, for which she is entitled to back pay, front pay, lost benefits, loss of value of benefit plans, loss of value of life insurance, compensation for emotional distress and anxiety, liquidated/punitive damages (where applicable), attorneys' fees, and such other legal and / or equitable relief to which she may be entitled as a matter of law.

**Count I—Violation of 29 U.S.C.A. § 2601, et seq.
The Family and Medical Leave Act ("FMLA")
FMLA Interference and Retaliation**

1.

Plaintiff reasserts each of the allegations set forth in this Complaint.

2.

Plaintiff suffered from a serious health condition, specifically, triple negative breast cancer, lung cancer, and bone cancer, for which she was treated by more than one physician for the condition in the qualifying period.

3.

Plaintiff's serious medical condition affected her major life activities.

4.

Plaintiff was denied medical leave from her immediate supervisor, Ms. Francois, and was retaliated against and eventually terminated over her need to take leave.

5.

In addition to retaliation, Defendants interfered with Ms. Hayes leave and retaliated against Ms. Hayes for taking leave.

## DAMAGES

Ms. Hayes' damages because of the actions of Defendants are extensive. Ms. Hayes' damages include but are not limited to:

A. The loss of employment and employment benefits (medical and retirement);

B. The loss of a Life Insurance policy to protect her two young children.

C. The loss of future employment.

D. Damages awarded by Statute.

E. Emotional distress as a result of the loss of employment as a mother and cancer patient.

F. Attorney fees awarded by Statute; and

G. All other reasonable fees and costs that Ms. Hayes may be entitled.

## DEMAND FOR JURY TRIAL

Ms. Hayes requests that this matter proceed before a trial by jury.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff Sharon Hayes requests judgment be entered against Defendant and that the Court grant the following:

a. Plaintiff requests a trial by jury.

b. Wherefore Plaintiff requests judgment be entered against Defendants and that the court grant the following:

   i. Declaratory relief.

   ii. Judgment against the Defendant for Plaintiff's asserted causes of action.

   iii. Award of Compensatory damages.

   iv. Award of special damages.

   v. Award of costs and attorneys' fees as provided for by statute.

   vi. Award of economic losses, including but not limited to back pay, and lost benefits, as established at trial.

   vii. Pre- and post-judgment interest; and,

   viii. An order for such other and future relief, at law or equity, to which Ms. Hayes may be justly entitled.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

RESPECTFULLY SUBMITTED,

_____
**CHELSEA B. CUSIMANO**, La. Bar No.34857
**M. SUZANNE MONTERO,** La. Bar No. 21361
**KATHERINE B. WELLS,** La. Bar No. 36077
**MEGHAN E. CARTER,** La. Bar. No. 35074
Sternberg, Naccari & White, LLC
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Phone: (504) 324-2141
Fax: (504) 534-8961
cbc@snw.law | suzy@snw.law | Katherine@snw.law
meghan@snw.law
Counsel for Complainant, Sharon Hayes


**PLEASE SERVE:**

**CENTENE MANAGEMENT COMPANY**
THROUGH ITS REGISTERED AGENT OF SERVICE
CT CORPORATION SYSTEM
3867 PLAZA TOWER DRIVE
BATON ROUGE, LOUISIANA 70816

**LOUISIANA HEALTHCARE CONNECTIONS, INC.**
THROUGH ITS REGISTERED AGENT OF SERVICE
KEITH ARMSTRONG
C/O CHAFFE MCCALL, LLC
8550 UNITED PLAZA, SUITE 103
BATON ROUGE, LOUISIANA 70809